One Technologies LLC. Ms. Bills. Thank you, your honors, and may it please the court. My name is Kelly Bills, and I represent appellants, the One Technologies entities. This appeal asks whether a party can lose its arbitral rights because it did not optionally preregister its arbitration agreement in a non-exclusive arbitral forum. The answer is no. There is no dispute that under the AAA rules, preregistration of One Tech's arbitration agreement was optional. And yet, the district courts held that because One Technologies did not take that option, it lost its arbitral rights. That was error. Reversal is warranted, and arbitration should be compelled here for three reasons. First, there is no waiver when a party merely chooses not to take optional conduct in an arbitral forum, as opposed to a situation where a party intentionally refuses to comply with a mandatory arbitral forum rule, like payment of fees. Second, an initial AAA administrative decision does not mean arbitration has been had. The arbitration here never got off the ground, in sharp contrast to cases where an arbitration panel or arbitrator terminates lengthy arbitration proceedings for failure to comply with the panel's request. And finally, the arbitration agreement here does not designate an exclusive arbitral forum, so the AAA's unavailability should be of no consequence. Now I'd like to turn to that first reason and a mandatory rule. There is no dispute, again, that under the AAA's rules, pre-registration of an arbitration agreement is optional. Consumer Rule 12 is very clear in saying that a business should provide the AAA with a copy of its agreement. However, Rule 12 is also clear that if a business does not, before an arbitration demand is filed, Rule 12 contemplates post-demand review of that arbitration agreement. This optional pre-registration rule is at the heart of the AAA's declination letters here. Both letters make just one request of One Technologies, and that is to register its arbitration agreement. At the bottom of that letter, it says One Technologies must at a minimum register its clause on the Consumer Clause Registry of our website. So to arbitration demand filed by plaintiffs, and then we have letters from the AAA asking One Technologies to register its arbitration agreement. That does not support a finding of waiver or that arbitration has been had. Now in plaintiff's response brief, they rely heavily on this court's 2022 noble capital opinion. That reliance fails. The facts are vastly different and actually support finding that no arbitration has been had. The facts are always different, but the principle in the case says when arbitration has been had, arbitration has been had, and it doesn't matter whether it's gone full-blown, etc., etc. So spotting you that the facts are different, what do you do with the holding since the case says, and other cases say, you don't have to look to, quote, the particular circumstances to divine on a case-by-case basis, but whether the process has been triggered or not. So what do you say about that? Sure, Your Honor, and there has been had analysis in all of these cases, not only noble capital, but Tillman, Cahill, this line of cases that noble capital cited all dealt with an arbitration panel terminating the proceedings after the arbitrator or the panel had already been appointed. So in noble capital, for example, it was 18 months of arbitration proceedings before an arbitration panel. The panel warned the parties if they did not pay fees, the arbitration— You're saying the distinction is that the process needs to have begun or be in some stage to say, quote, arbitration has been had, but if the process never began, you say that's the exception? Exactly, Your Honor. There are two rules here, actually. First of all, it's the optional piece of this rule that we're talking about. It was the optional preregistration rule that was triggered here and that triggered the declination letters, and in the cases where the has-been-had analysis is applied, those cases are involving arbitrator or arbitration panel decisions, not an initial AAA declination letter based on an optional rule. So those are two key distinctions. We also have a third being the you just hit on. Again, in noble, we had 18 months of arbitration proceedings. We had a two-day hearing before a panel. There was warnings to the party to pay fees. One party claimed it could not, and the jams arbitration panel terminated the arbitration. Prepaid legal services versus Cahill, four months of arbitration proceedings. An arbitrator was appointed. The arbitrator panel terminated after first suspending, asking for payment, and the parties did not pay. And finally, in Tillman, again, an arbitrator was appointed. So in each of these cases, we have an arbitrator or arbitration panel making the decision, not an initial AAA administrative decision declining to administer because there was no preregistration. And underlying all of these opinions is the idea of prevention of gamesmanship, where parties are going through arbitration proceedings before a panel and then choosing not to complete those going back to court and then asking to go back to arbitration again. So noble has a very big flavor of that throughout the opinion, where the court is ... If those cases really said what you excellently articulate, they could have easily said that. I think they do say that. In other words, there would be language saying the particular circumstances is a trigger mechanism, so we have this case by case as you're defining it. But unless I'm missing it, which in any of the cases say that the decision is based on, in other words, the circumstance? Because that's the argument, which has some force to it. I'm just saying, help me out. Sure, Your Honor. I think the ... You're asking us to say that. Yes, Your Honor. I think the underlying premise of all these cases was a refusal to pay the arbitrator's fees. And so that's the genesis of all of these decisions. They're coming from arbitration proceedings continuing on a party not paying fees. And so noble is just another in that long line dealing with failure to pay an arbitrator or arbitration panel's fees. And the cases that have been cited, Cahill, Freeman, Tillman, they all are on along that same line. It's a refusal to pay fees. Noble went one step further in the sense of saying, we're not going to ask whether it's a refusal to pay fees, for example, or it's some other reason that the arbitration proceedings themselves terminated. That was the real nexus or the real point of noble was that it didn't matter if it was a fee refusal or, for example, it was a party not showing up to the final hearing. But the facts were all the same in those cases. It was a party's refusal to comply with a mandatory rule. And here we don't have that. We have an optional pre-registration rule, and that is the only rule that is indicated in the letters as far as what the parties or what One Technologies needed to do. It's very clear at the end of the letter that all One Technologies needed to do was register its arbitration agreement. And so all of these cases, while they don't specifically say these facts therefore trigger this law, those are the underlying genesis of facts. They're the same facts over and over again where a party is going through the arbitral process before an arbitrator or an arbitration panel and then letting those proceedings lapse, and then the arbitrator or the panel itself is terminating. Not a situation where there's an initial declination. There are three cases that the plaintiffs rely on, Bedgood, Heisman, and Greco, that all involved a situation where it was earlier in the proceedings there was an initial declination or something along those lines. We have a couple of points on those. First of all, they all involve the AAA as an exclusive arbitral forum. We do not have that here. All we have is an agreement to the AAA rules. Beside that, though, Greco was the first chronologically in this line of cases. There the court recognized that Uber was the other party on the case in the past. Again, we have a common denominator, a failure to pay arbitration fees in prior cases, but Greco relies on the same line of authority that involved an arbitrator terminating proceedings for failure to pay. Heisman then picks up on Greco and the same line, Tillman, Lifescan, the same line of cases about refusal to pay an arbitrator's fees, and Bedgood is in the same vein. It relies on Freeman and cases where an arbitrator terminated to reach the result here. Bedgood, I would also note, was just argued to the Eleventh Circuit on April 21st, so that is the only of the three cases at circuit level review, and the same arguments are being made there as far as arbitration not being, it has not been had when there's this initial declination. Those cases are all distinguishable, and we would posit they are wrongly decided. They rely on the wrong line of authority because they are all dealing with arbitration panel decisions, not an initial AAA declination. Here, the parties should be free to contract for arbitral rules. They should be free to contract for forum, and here the parties only agreed to use the AAA rules, so the AAA's unavailability should have been of no consequence. This is not a situation where the only available forum was closed to the parties, and Section 5 fills the gap. The FAA Section 5 fills that gap and permits a court to appoint a substitute arbitrator. There's one other thing I'd like to point out that distinguishes this case from the cases that plaintiffs rely on. Here, 1 Technologies had no opportunity to cure. We had the plaintiffs filed their arbitration demands, nothing occurred between the arbitration demands and the declination letters, and then we received the declination letter. So in these other cases, Tillman, Kaye, Hill, Noble, there were repeated refusal to comply with a mandatory arbitral forum rule. Here, we have an arbitration demand. We have optional pre-registration. 1 Technologies did not optionally pre-register in a non-exclusive forum, and then it receives declination letters. That does not support a finding of waiver because 1 Technologies never acted inconsistently with its arbitral rights simply by failing to pre-register and follow an optional pre-registration rule, and it also does not support a finding of has-been-had because again, those has-been-had cases are all dealing with an arbitrator or arbitration panel decision. Plaintiffs also wanted to make this case more like Noble in saying that there was a failure to pay fees issue, but again, the only action called for unequivocally in the letters is registration of the arbitration agreement. That's made very clear at the bottom. I thought there was some mention in there of if you fail to pay, register the agreement before arbitration demand was made, you can still have an expedited proceeding. What about that piece? Yes, Your Honor, that's exactly right. So if the arbitration demand is filed, Rule 12 permits review, post-demand review of the arbitration agreement, but we did not get to that point because we got the declination letters that said, please register. 1 Technologies did that, registered its agreement, and then of course, the due process analysis occurred at that point. So as soon as 1 Technologies registered its agreement, the AAA did its due process analysis, asked for waiver of a particular forum clause for Dallas, Texas in the arbitration agreements, 1 Technologies did that, and then the AAA issued letters within eight days saying, yes, we are ready, willing, and able to administer these arbitrations. So there was no due process issue at the beginning. Plaintiffs also made this a that there was some sort of fatal flaw with these arbitration agreements. That's simply not true. The due process review could not occur until the arbitration agreements were registered, and 1 Technologies went through that process. It also went through the due process review with the AAA. The AAA looked at the agreement, asked for a waiver of a specific provision, 1 Technologies did that, and the AAA said it was ready, willing, and able to move forward. So again, throughout all of these circumstances, none of that conduct would suggest waiver. 1 Technologies abided by the AAA's request. It did not refuse to comply with AAA requests, nor did it have an opportunity to cure before the declination letters came. It was a very quick succession of events. And so that distinguishes all of the other cases that plaintiffs rely on in their response, particularly Noble Capital, which is the central piece. That case is not on all fours with the case that we have here, because again, we've got an optional rule versus a mandatory fee payment rule, an arbitrator making the decision, an arbitration panel making the decision, and then there's no due process issue, and there's no failure to pay fees. The declination letters themselves use an if applicable language related to fees, and the sequence of events shows here that 1 Technologies did in fact pay fees, because again, once these declination letters came in, 1 Technologies registered, and the AAA would not have said it was open, willing, and able to administer arbitrations if fees were outstanding. So again, for all of these reasons, I'll reserve the rest of my time for rebuttal, but for these reasons, we ask that this Court reverse and compel arbitration. Good morning, Your Honors. May it please the Court. Two different district judges independently reached the conclusion that one tax motion to motions to compel arbitration should be denied, and there are two overarching reasons those rulings should be affirmed. First, the AAA is the exclusive arbitral forum as a matter of AAA rules that the parties incorporated into their agreement. Second, those rules unambiguously provide that the AAA will decide, not an arbitrator, whether a consumer arbitration clause complies with the AAA's due process standards. Both points are a basis for affirmance, and I'm going to address the second point first in light of the argument that just occurred. One tax failure to register its arbitration clause after plaintiffs made their arbitration demands was a fatal defect. AAA Rule 1D requires registration and approval of a business's arbitration clause in a consumer contract before it will administer a consumer arbitration. That rule says, in pertinent part, the AAA will accept cases after the AAA reviews the party's arbitration agreement, and if the AAA determines the with the due process standards of these rules and the consumer due process protocol. Now, one tax makes much of the fact that the AAA does not require businesses to pre-register their arbitration clauses. But pre-what? Pre-demand, before a consumer files an arbitration demand. So that's a red herring, the failure to pre-register. What is mandatory, what is required by AAA rules is registration after a consumer makes a demand. That is not optional. Rule 12. When did AAA say we are ready, willing, and able to proceed? I'm sorry? When did AAA say we are ready, willing, and able to proceed? After it declined to administer the arbitrations. How long after? Well, I have that answer right here. So in the Stavis case, Mr. Stavis demanded the arbitration on August 9th, 2021, and it was not until, and the AAA terminated that proceeding on August 30th, 2021. Nothing from One Tech after that. 4B demanded arbitration on September 17th, 2021. That was terminated on October 18th of 2021. And in that termination letter, the language that counsel referred to advising One Tech to register its clause, it was after that letter issued that One Tech finally did register. There's no record of the specific date on which it did it, but it did it after that second declination letter. And here's an interesting thing. On October 20th, 2021, the AAA advised, contrary to what you've just heard, that the arbitration clause was not compliant with the AAA's consumer due process standards because it required arbitration to be in Dallas, Texas. And in consumer arbitration clauses, the AAA requires, or it does not allow, arbitrations to be conducted solely in one geographic location for obvious reasons. Many consumer claims are, you know, don't involve a lot, there's not a lot at stake financially, and consumers shouldn't have to travel across the country to arbitrate their claims. And it requested One Tech to waive that provision, which One Tech did on October 26th, which is eight days after the second declination letter. And when did AAA say it was ready, willing, and able to arbitrate? Subsequent to that. What, I just want the date. I don't know the date on that, but I have to refer to the record, but it was after October 26th. So, the filing of the, or registration of the arbitration clause is mandatory after demand is filed. Not only is it mandatory, the rules require, AAA rules require, Rule 2 requires that an answer be filed 14 days after the demand. That didn't happen in either of these cases. There was nothing from One Tech after the filing of the demand. Counsel just noted herself that nothing happened between the filing of the demand and the declination letters. And that is exactly right, and that is the problem, because the rules, a mandatory rule of AAA, consumer rules, requires, Rule 2 requires that the respondent file an answer within 14 days of the demand. And that just didn't happen here. Nothing happened. What should have happened had One Tech wanted the It should have requested expedited review of its arbitration clause, and it should have paid an expedited review fee of $250. We've cited this in our brief. It's in the record. $250 plus another fee of $500. I, for the life of me, cannot understand how One Tech takes the position that this case is different than all the other cases where an arbitration, quote, unquote, had been had for failure to pay fees, which it did not pay, and you just heard it yourself. Nothing happened between the filing of the demand and the declination letters, but fees should have been paid, and they didn't pay them. In their reply brief, they say that there is no evidence of that in the record. Well, putting this, I mean, they were in default in three different ways. They were in default because they didn't file an answer, they didn't request expedited review of their arbitration clause, and they didn't pay those fees. So even if you put aside the payment of fees, they're still in default in two other ways, not responding, not requesting review. But here, the absence of evidence of payment is because they didn't pay. The absence of evidence is the evidence. They're right. There is nothing in the record to show that they paid the fees because they didn't, and that's not even truly in dispute. I don't think counsel will tell you that they paid the fees before the second declination letter. They make the argument that arbitration had not been, had, and in fact, had not even started, but they don't explain when an arbitration begins, if it's not with the filing of a demand. But once again, like every question in this case, like every question in every arbitration case like this, is what did the parties agree to? Because your job is to give effect to the party's agreement. Here, the agreement was we apply AAA rules. AAA rules say rule two, which is titled starting arbitration under an arbitration agreement in a contract, and then it lays out how you start an arbitration, which is the filing of a demand. In a case like Forby, if the arbitration is pursuant to a court order, the claimant must send one copy of the demand to the AAA at the same time the demand is sent to the respondent. We've cited in the record, and it's in the record, you can see for yourselves, even the envelopes, the postage, everything is there. We did this. We complied with rule two, and that is how an arbitration begins. And more importantly, rule two also says that the case, this is rule two, AAA rule two E, the case will move forward after 14 days regardless of whether an answer is filed. So the arbitration proceeding was not only started, it was proceeding. And what one tech doesn't like about that is the very first step in the process is where they stubbed their toe. They didn't comply with a mandatory rule, mandatory rules of the AAA, the party's chosen and exclusive forum. I'd like to turn to that question now. The AAA, first of all, it's undisputed here, of course, that the transactions at issue are consumer transactions and that the AAA consumer rules are the relevant rules at issue. And those two undisputed facts are critical here because they lead to the unavoidable conclusion that the AAA will not be able to perform to administer any arbitration under their arbitration agreement. Why? Because that's what the arbitration clause says. Now, what do the AAA rules say? Rule one A, the very first of the AAA consumer rules, says when parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement. The only attempt one tech makes to explain that language away is in a footnote in their opening brief to page 12, footnote three. And it argues there that the selection of AAA rules does not make AAA administration of the arbitration an essential term of the party's agreement. But it doesn't explain that conclusion. It offers this court no rationale on which it can base that conclusion. And the language is clear. The conjunctions in that sentence are critical to a proper understanding of it. The selection of the AAA rules or AAA administration means that both AAA rules and AAA administration are then an essential term of the party's agreement, unless the key to everything in these arbitration disputes is the parties agreed otherwise, and they didn't care. There's nothing in the arbitration agreement that carves out any of the AAA rules. So this rule applies. This makes AAA the exclusive arbitral forum. And why does one tech not offer the court an explanation to support its reading? I think it's probably fair to say after two briefs and 15 minutes of an oral argument, it's because they don't have a plausible alternative reading of that crystal clear language. There isn't an alternative reading of that language. And by the way, a point which I discovered as I was preparing for this argument that I'm sure this panel would want to be aware of, and we were remiss for not addressing this in our brief, and one tech has never addressed it, and I intend to file or send a Rule 28J letter addressing it, which is the binding precedent of the circuit, stands for the proposition that, quote, and I did some slight editing to clean this quote up, clauses providing for arbitration in accordance with a particular set of rules should be interpreted as forum selection clauses. That's Galey versus World Marketing Alliance, 510F3rd, 529F532. That's a 2007 decision of this court. That one involved NASD rules. NASD, because parties had agreed to those rules, therefore was the exclusive arbitral forum. You realize 28J is designed for something that the ink is still wet on it, right? Yes, sir. I do. A 2008 or 2007 case hardly fits, you know, that category. You are correct, but it is something that both parties overlooked and I thought that the court would want to be aware of it. So why does it matter that the AAA is the party's chosen exclusive forum? I mean, as you can see in the briefs, this is an issue of extreme importance to one tech, because if the AAA is the party's chosen forum and if it is, as one tech says repeatedly, like a mantra throughout its brief, that it was unavailable for any reason when a party demands arbitration, then it's back to court. It's over. The courts don't require parties to arbitrate in a substitute forum. That's very well-established law and that's why it matters that the arbitration, that the AAA is the party's exclusive chosen arbitral forum. One other point I'd like to address is the AAA, one tech says the AAA can't administratively decide whether an arbitration clause is compliant with its due process standards. That's for an arbitrator to decide and no arbitrator has even been appointed, but that assertion is inconsistent with the party's agreement, or more specifically, with the AAA rules that the parties incorporated into their agreement. What do those rules say? AAA Rule 1D. I'll read the entire rule. The AAA administers consumer disputes that meet the due process standards contained in the Consumer Due Process Protocol and the Consumer Arbitration Rules. The AAA will accept cases after the AAA reviews the party's arbitration agreement, and if the AAA determines the agreement is substantially and materially complies with the due process standards of these rules in the Consumer Due Process Protocol. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. That is the party's agreement. They agreed to this rule. That's why the district court was correct. Both judges were correct when they said the plaintiffs demanded arbitration and the arbitration led them right back to the courthouse. Finally, I would like to briefly address the attempted distinctions of Noble. On page four of their brief, you have this little chart with the green check marks and red Xs. While it's true, the first one is there was an arbitrator appointed in Noble. While that's true, as I've just explained, an arbitrator's decision on the compliance or non-compliance of the One because the parties decided to let the AAA administratively decide this question before an arbitrator was appointed. Parties can agree to have Puff the Magic Dragon decide questions if they want to, and that's what they did here. They allowed the AAA, not an arbitrator. They made AAA the arbitrator, and that was their agreement, and that's what happened. So the fact that an arbitrator was not appointed in this case and was in Noble is a distinction that is meaningless for our purposes today. Second point, proceedings occur before an arbitrator. Well, proceedings occurred, but again, not before an arbitrator because under AAA rules, something they haven't proceedings, their fourth distinction. Well, again, same point. They agreed that the AAA would decide this question. And finally, party refuses a request to comply with mandatory arbitral form rule, and I've explained to you how they violated the mandatory rule to answer, the mandatory rule to request expedited review, and to pay the $250 and $500 fees. If the Court has no questions, time has expired. Thank you. May it please the Court. Let me start with the due process issue. Again, that is not an issue here, and I would like to get to Chief Judge Richmond's questions about the dates. October 18th was the declination in Forbee. October 20th, the AAA asks for a waiver. It is not a second declination letter. It's an ask for a waiver of the Dallas Forum Selection Clause. And then on October 26th, just eight days later, the AAA says that it is ready, willing, and able to administer the arbitrations. That due process review could not have occurred until the agreement was registered. I'd like to move on to the fact about the AAA being the exclusive forum. It is not the exclusive forum. The parties only agree to the AAA rules. The AAA rules do not trump the party's agreement, and the majority of courts would say that agreeing to rules does not include agreement to an exclusive forum. Briefly, I'll mention the Galey case that opposing counsel just raised. That case was briefed in the district court. We distinguished it. Plaintiffs never responded to that distinction, and so we thought that case was gone. There are key distinctions in that case. That contract in that case was governed by Mississippi law, and because there was no Mississippi law on point, the court held that the agreement in that case designated an exclusive forum. Here, it is undisputed that Texas law governs the contract, and under Texas law, the language of the parties used here pursuant to the AAA rules would not constitute an exclusive forum designation clause. In fact, the parties did designate a forum here. It was Dallas, Texas. I'd also like to note that there is a delegation clause in this contract. Again, the party's agreement trumps the AAA rules, and the party's agreement was that arbitrability issues go to the arbitrator. To the extent that arbitrability is at issue in this case, that decision should have been for the arbitrator, not for a AAA administrator. Finally, I'll move on to all the arguments about nothing happening and all those sorts of arguments. One technology has had no opportunity to cure here. The demands were filed. No answer is required under the rules. The case proceeds, but I'd like to point out one thing about the arbitration demand that opposing counsel has not mentioned. At the record in 148 and also at 1551, there is a notice from the AAA saying thank you for submitting your arbitration demand. But at the very bottom, it says this notice does not constitute the AAA's initiation of the case or satisfaction of all the administrative filing requirements. So even there, we had arbitration demands filed, a notice saying the case has not been initiated, and the next thing one technology hears is that the arbitrations have been declined for failure to optionally pre-register an arbitration agreement. Fees were then paid because one technology did register its arbitration agreement, and within a matter of eight days, the AAA said it was ready, willing, and able. So if fees had not been paid once again, the AAA would have never said it was ready and willing and able to move forward with arbitration here. I would also like to point out we had no invoices for fees. There were no requests for payment. That also distinguishes this case from the legion of cases cited by both parties here, Tillman, Cahill, Noble. In all of those cases, we have repeated requests to comply with the arbitral forum's rules, and the party refused to comply. Here, arbitration demand, declination letters, one technology quickly remedies, files its arbitration agreement, goes through the due process review that can only occur after the arbitration agreement is filed, waives its forum provision as requested by the AAA, and then the AAA is now open, ready, and willing. At bottom, no arbitration has been had here because no panel was appointed, no arbitrator was appointed, and there cannot be a waiver analysis applied to the facts here because one technologies did not act inconsistently with its arbitral rights by failing to or choosing not to take optional conduct in a non-exclusive forum. I'll leave to the briefing our arguments on the AAA rules of rule 1a as to why it is not an exclusive forum. There's an and or switch there, but again, at bottom, putting aside what the AAA says in the declination letters, asking us to pre-register, or asking us to register, the court applies it has been had or a waiver analysis. Neither of those analyses apply. Was Davis required under the AAA rules to file the agreement when they made a demand for arbitration? I'm sorry, say that again. Was Davis required under the AAA rules to file the agreement when they made a demand for arbitration? Yes, that is a requirement. However, in the record, what we have before us is simply the claims. So we have no indication whatsoever that the arbitration agreement was filed by Stavis or by Forby. All we have is the form letter. At the bottom, it does say the arbitration agreement was supposed to be filed, and then we have the claims in the record. We have nothing to indicate that Stavis and Forby actually complied with that requirement, and then one technology is that the court has any other questions. I see that I'm out of time. We ask for reversal and that these cases be compelled to arbitration. Thank you for your time.